IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KEENAN K. COFIELD | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. CCB-16-1985 |
| STATE OF MARYLAND | * | |
| LARRY HOGAN, *Governor of Maryland* | | |
| BRIAN FROSH, *Maryland Attorney General* | * | |
| NANCY KNOB, *Maryland State Treasurer* | | |
| MD BOARD OF PUBLIC WORKS AND ITS MEMBERS | * | |
| STEPHEN T. MOYER, *Secretary of DPSCS* | * | |
| COMMISSIONER WEBB, *MD DOC* | | |
| ALL MD. GENERAL ASSEMBLY MEMBERS | * | |
| WARDEN KATHY LANDERKIN, BPRU | * | |
| STATE FIRE MASRSHALL | | |
| Defendants. | | |

\*\*\*\*\*

## **MEMORANDUM**

Pending is an unopposed[1] motion to dismiss or, in the alternative, motion for summary judgment, filed by defendants State of Maryland, Hogan, Frosh, Moyer, Webb, and Landerkin.[2] ECF No. 20. The motion is supported by a memorandum (ECF No. 20-1) (collectively, the "Motion") and exhibits in the form of medical records and declarations. ECF Nos. 20-2 to 20-4.[3] The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For reasons to follow, defendants' motion to dismiss or, in the alternative, motion for summary judgment, will be granted.

---

[1] Cofield was informed by the court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that failure to file a response in opposition to defendants' motion could result in dismissal of the complaint. ECF No. 21. Despite being provided additional time to file an opposition response (ECF Nos. 23 & 26), Cofield has not filed an opposition to the motion.

[2] All defendants have been served with the exception of defendants Knob [presumably a reference to Treasurer Nancy Kopp], the "Maryland Board of Public Works and its Members," "All Maryland General Assembly Members," and the State Fire Marshall.

[3] All references to docket entries reflect their electronic pagination.

# I. BACKGROUND

## A. Cofield's Complaint

Keenan K. Cofield, a former state inmate, filed the instant 42 U.S.C. § 1983 "emergency" complaint on June 9, 2016 while housed at the Baltimore Pre-Release Unit (BPRU), alleging that defendants purposely hire more Black officers than White officers at all Baltimore City regional institutions, as compared to the other parts of the state of Maryland.[4] He argues that the "tilt" to hire more Black hires as staff at BPRU and all Baltimore City region prisons and jails represents hiring practices and employment placement policies that are clearly discriminatory. Cofield claims that Black inmates in Baltimore City are treated more harshly and unfairly in "all areas" compared to Whites in other Division of Correction ("DOC") facilities run by Whites with a "larger number of White staff to officials in vital positions within the Maryland DOC agency." He claims he is being adversely affected" by the "reverse racial divide with too many Blacks are representing too many Blacks in staff and inmate ratios." ECF No. 1, pp. 3-4.

Next, in "Count II" of the complaint Cofield alleges that BPRU inmates are exposed to levels of dangerous conditions or toxic substances due to inadequate ventilation and exposure to environmental tobacco smoke ("ETS") as well as other contraband drugs that are smoked constantly in living and housing areas in Maryland prisons. He claims that he has chronic asthma and the conditions necessitated use of his inhaler and forced him to seek medical attention for a "physical injury," including severe headaches, difficulty breathing, eye irritation, dizziness, and a runny nose. Cofield claims that defendants have failed to control contraband

---

[4] The complaint was filed on behalf of Cofield and other BPRU inmates and was split into individual cases filed by each BPRU inmate. All but two of the cases were dismissed without prejudice due to non-compliance with local rules. The other remaining active case, *Butler v. Maryland, et al.*, Civil Action No. CCB-16-2610 (D. Md.), was dismissed in June 2018.

2

tobacco products from coming into the facility and that his exposure to second-hand smoke violates "contemporary standards of decency." *Id.*, pp. 4-7.

Cofield further contends the environment at BPRU and other unspecified Department of Public Safety and Correctional Services ("DPSCS") facilities is unhealthy, unsafe, and dangerous as there are no working fire detectors, sprinklers, or emergency lights; the floor and walls are laden with asbestos; and there is no fire-fighting equipment. He alleges that the roof at BPRU leaks when it rains, the sinks require fixing, the toilets and showers are stopped up, there are insufficient washers and dryers, and the facility is overrun by pests and vermin. Cofield complains there are no welfare packages for indigent inmates, food portions are inadequate in size and are not provided consistent with schedules at other prisons, there are no outside recreation areas for BPRU inmates, and there is inadequate space for inmates. He further alleges that his right of access to the courts is being violated as there are no law libraries, no legal aides or paralegals, no copier system, no legal research computers or access to any CD-ROM system. Cofield claims that he has over 20 pending legal actions in state and other federal courts and he is unable to comply with court orders or prepare legal responses. *Id.*, pp. 8-11. He seeks compensatory and punitive damages, asks that defendants be ordered to hire more Whites at all DPSCS institutions in Baltimore, and requests various declaratory and injunctive relief. *Id.*, pp. 3 & 12-17.[5]

## B. Cofield's amended/supplemental complaints

In an amended complaint filed June 23, 2016, Cofield adds utility corporations as defendants because they previously owned the BPRU property site.[6] ECF No. 5. He later sought

---

[5] Because Cofield has been released, his claims for injunctive and declaratory relief are moot.

[6] In light of the general and conclusory nature of the allegations against the Baltimore Gas & Electric, Company, the Constellation Energy Group, and Exelon, the amended complaint against them will be dismissed.

3

to supplement his allegations to include claims that there is lead in tiles, which when lit by inmates, causes toxic fumes to emanate. Cofield also complains that legal mail is being opened outside his presence. ECF No. 7. He next seeks to supplement his complaint to include claims that defendants have violated their own "mission statement" and policies in light of the previously alleged violations. ECF No. 8.

## C. Correctional defendants' response

The Defendants explain that Cofield was housed at BPRU from about May 10, 2016 through October 10, 2016. ECF No. 20-2 and ECF No. 20-3, p. 191. He was previously housed at the Metropolitan Transition Center ("MTC") where he filed a number of sick-call requests complaining that he was suffering from asthma, as well as sore and scratchy throat, due to exposure to second-hand smoke and other toxins. ECF No. 20-2, pp. 5-20, 32-35. Moreover, he filed multiple Administrative Remedy Procedure ("ARP") grievances, which included complaints concerning exposure to second-hand smoke and asbestos, violations of his access-to-courts rights, and the hiring practices of the DPSCS. ECF No. 20-3, Boykins Decl., pp. 3, 16, 18, 20, 22, 24-28, 36, 39-40, 42, 44, 80-101, 146, 148-149, 203. On June 21, 2016, he asked for a protective mask to protect him from the mold, mildew, and other substances in the air. ECF No. 20-2, pp. 2-4. He further informed medical staff that he was excessively using his inhaler. He was given a mask and several medications were prescribed or continued. *Id.* When Cofield presented himself at sick call on June 27, 2016, complaining of a lower extremity edema, his respiration was found to be normal. Aside from the finding of a lower extremity edema, his examination was unremarkable. He was given a TED anti-embolism stocking. *Id.*, pp. 5-6.

Defendants assert that they provide inmates legal materials and a library clerk and that Cofield failed to file an ARP raising this issue at the institutional level. ECF 20-3, pp. 220-225. They argue that the institution followed directives and policies regarding the prohibition of

4

tobacco products and all buildings were certified asbestos free. *Id.*, pp. 226-235. They deny that Cofield was subject to unconstitutional conditions.

## II. STANDARD OF REVIEW

### Motion to Dismiss

The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) is to test the sufficiency of the Complaint. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A Plaintiff's Complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Because Cofield is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In evaluating the complaint, the court need not accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 556 U.S. at 679, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] ... that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* A complaint needs to give the parties sufficient notice as to the type of claim being alleged. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).

## Motion for Summary Judgment

Because defendants have filed and relied on a declaration and exhibits attached to their dispositive motion, the motion also will be treated as one for summary judgment. Summary judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

### III. DISCUSSION

#### Sovereign Immunity

The correctional defendants argued that the State of Maryland is not a "person" under 42 U.S.C. § 1983 and has not waived its sovereign immunity under the Eleventh Amendment to suit in federal court. Indeed, neither a state, nor an agency of a state, nor a state official acting in his official capacity, is a "person" within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-65, 70-71 (1989). Moreover, the State of Maryland is immune from liability under the Eleventh Amendment from a § 1983 suit in federal court. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100-01 (1984); *see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (stating that absent waiver of Eleventh Amendment immunity, "neither a State nor agencies acting under its control may be

subject to suit in federal court") (quotations and citations omitted). Consequently, the complaint against the State of Maryland and all state defendants in their official capacity will be dismissed.[7]

### Defendants Hogan and Frosh's Culpability

Although they are named in the caption of the complaint, Cofield raises no factual allegation against either Governor Larry Hogan or Attorney General Brian Frosh in the body of his complaint. Under these circumstances no viable claim has been stated against these individuals. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Dove v. Fordham University*, 56 F. Supp.2d 330, 335 (S. D. N.Y. 1990) (where complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted). The complaint against Hogan and Frosh will be dismissed.

### Supervisory Liability

Although they are named in the caption of the complaint, Cofield also levels no specific factual allegations against Secretary of DPSCS Stephen Moyer, Assistant Commissioner (East Region) Wayne Webb, and BPRU Warden Kathy Landerkin. In order for an individual to be liable under § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971); also *see Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no *respondeat superior* liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may

---

[7] The defendants do not directly respond to Cofield's claims regarding DPSCS's hiring practices. As he has failed to show he was directly affected by the alleged practices, however, Cofield's claim will be dismissed.

be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Where, as here, Cofield points to no action or inaction on the part of a supervisory defendant that resulted in a constitutional injury, the claims against Secretary Moyer, Assistant Commissioner Webb, and Warden Landerkin must be dismissed. The court will now address Cofield's numerous remaining claims *seriatim*.

### Access to Courts

Cofield contends that BPRU has no law libraries, no legal aides or paralegals, no copier system, no legal research computers or access to any CD-ROM system. Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). The Supreme Court clarified the *Bounds* decision by finding that a deprivation of an inmate's right of access to the courts is actionable, but only when the inmate is able to demonstrate actual injury from such deprivation. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996). According to the *Lewis* opinion, the Constitution does not guarantee inmates the ability to litigate every imaginable claim they can perceive, only

9

that they be given the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355.

Cofield has failed to show that his lack of access to the materials in question caused him actual harm. He references no specific cases to demonstrate that he was unable to proceed with his litigation, nor does he identify any that were negatively affected due to his alleged lack of research materials. Because he has not identified with any specificity an actual injury occurring as a result of the alleged confiscation of his materials, his conclusory allegation that his lack of access to the materials caused him to "lose cases," is insufficient to support his access-to-courts claim. Further, his mere allegation that he has numerous pending cases does not suffice for evidence of an actual injury.

### Conditions of Confinement

Cofield states that the conditions of his confinement were unconstitutional due to his exposure to ETS, asbestos, lead paint and a number of other conditions.

A prisoner may set out a conditions of confinement claim by alleging that he was deprived of a basic human need which was objectively sufficiently serious and that subjectively, prison officials acted with a sufficiently culpable state of mind to expose him to those conditions. *Strickler v. Waters*, 989 F. 2d 1375, 1379 (4th Cir. 1993). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment conditions of confinement claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Such deprivations may be demonstrated by producing "evidence of a serious or significant physical injury resulting from the challenged conditions," *Strickler*, 989 F. 2d at 1380-81; or by demonstrating a substantial risk of serious harm resulting from the unwilling exposure to the challenged conditions. *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993). The key in determining whether prison conditions become cruel and

unusual punishment is to examine the effect on the prisoner. *Rhodes v. Chapman*, 452 U.S. 337, 364 (1981).

Cofield raises conclusory allegations that he was exposed to ETS, lead, and asbestos at BPRU during his five-month period of confinement at that facility. He further complains of overcrowding, rodents, as well as toilet and shower backups, inadequate food portions, mold and mildew. He has failed, however, to proffer medical evidence or other specific declaration showing that he suffered a real and actual injury from being subjected to the alleged BPRU conditions. The medical records show certain chronic complaints that were appropriately treated. Accordingly, Cofield has failed to show a constitutional violation.

### IV. CONCLUSION

For the foregoing reasons defendants' unopposed motion to dismiss or, in the alternative, motion for summary judgment will be GRANTED.[8] The complaint against Nancy Knob [sic], the "Maryland Board of Public Works and its Members," "All General Assembly Members" and the State Fire Marshall will be dismissed without requiring service. A separate order follows.

Date: 8/21/18

_CCB_
Catherine C. Blake
United States District Judge

---

[8] The court declines to exercise supplemental jurisdiction over any state law claims that arguably may be included with the federal claims.

11